IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES BREITENBACH**, <br><br> *Plaintiff,* <br><br> v. <br><br> **SAGESTREAM, LLC**, <br><br> *Defendant.* | **Case No. 2:24-cv-00893-JDW** |

### MEMORANDUM

James Breitenbach disclosed expert testimony on the eve of arbitration, well after the deadline I set. I gave him a choice: proceed to arbitration without the expert report; or keep the report, adjourn the hearing, and pay SageStream for its travel costs incurred. He elected to keep the report, so I postponed the hearing and instructed him to compensate SageStream for travel expenses incurred for the original hearing date and for any duplicate work needed to prepare for the rescheduled date. I cautioned SageStream that I would review those expenses carefully. Despite this warning, SageStream seeks compensation for new work, not just work that had to be redone. That isn't what I authorized, so I will reduce their hours totals.

I.   **BACKGROUND**

On April 19, 2024, I referred this matter to the Court's arbitration program. That Order instructed the Parties to disclose expert testimony at least eight weeks before the

arbitration hearing. The Clerk of Court then scheduled the arbitration for August 22, 2024. On August 5, 2024, at the Parties' joint request, I continued the arbitration until November, and the Clerk of Court scheduled it for November 1, 2024.

On October 22, 2024—ten days before the arbitration hearing—Mr. Breitenbach served an expert report. SageStream sought to exclude the late-disclosed report. I offered Mr. Breitenbach a choice: (a) exclude the report and move forward with the scheduled arbitration; or (b) keep the report, adjourn the hearing, and bear the costs and fees that SageStream incurred for the adjournment. Mr. Breitenbach chose the second option, so I cancelled the arbitration hearing scheduled for November 1, 2024, and ordered him to reimburse SageStream for (a) the reasonable costs and fees SageStream incurred in having its witnesses and attorneys travel to Philadelphia for the arbitration hearing that was to take place on November 1, 2024; and (b) the reasonable costs and fees associated with having to reprepare for the rescheduled arbitration hearing. In that Order, I stated that SageStream could file a petition to recoup these expenses after arbitration concluded.

The Parties convened for an arbitration hearing on January 28, 2025. On February 18, 2025, SageStream filed its Motion For Attorneys' Fees And Costs. (*See* ECF No. 39.) That Motion is ripe for review.

## II. LEGAL STANDARD

The party seeking attorneys' fees must "submit evidence supporting the hours worked and rates claimed" and has the burden of proving that its request is reasonable. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (quotation omitted). "[T]he party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." *Id.* (citation omitted). "For work to be included in the calculation of reasonable attorneys' fees, the work must be useful and of a type ordinarily necessary to secure the final result obtained from the litigation." *Planned Parenthood of Cent. N.J. v. Att'y Gen. of State of N.J.*, 297 F.3d 253, 266 (3d Cir. 2002) (quotations omitted). Hourly rates are typically set according to "the prevailing market rate in the relevant community." *Id.* at 265 n.5 (citation omitted). However, "[t]he policy considerations behind fee awards to prevailing plaintiffs … are different from the policies underlying sanctions," as sanctions operate as a deterrent. *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 196 (3d Cir. 1988).

## III. ANALYSIS

### A. Attorneys' Fees

SageStream may recover reasonable costs and fees associated with having to reprepare for the rescheduled arbitration hearing. To calculate the appropriate award for

attorneys' fees, I multiply the number of hours reasonably worked by a reasonable hourly billing rate.

### 1. Number of Hours

SageStream attorneys Derek Schwahn and Kearstin Sale prepared for the rescheduled arbitration. They claim a combined total of 39.9 hours of duplicate work, but not all of it is recoverable.

*First*, SageStream cannot recover for the work related to the late-disclosed expert report to the extent that they would have had to do the work if Mr. Breitenbach had made a timely disclosure of the report. Thus, entries that describe SageStream's counsel drafting, editing, and otherwise preparing materials related to the Mr. Breitenbach's expert, not merely re-acquainting themselves with that material, do not reflect duplicate work, and SageStream may not recover for it. I will therefore reduce Mr. Schwahn's time by 7.9 hours and Ms. Sale's time by 4.2 hours, reflecting the following subtractions:

- 12/2/24, Sale, 1.6 hours to "[e]xamine deposition transcript for deposition of plaintiff's expert …";
- 1/21/25, Schwahn, 1.2 hours to "[d]raft and edit expert witness cross exam outline for arbitration";
- 1/22/25, Schwahn, 0.7 hours to "[r]eview and analyze plaintiff's expert witness deposition transcript to inform cross examination outline";
- 1/22/25, Schwahn, 0.9 hours to "[c]ontinue drafting and editing cross examination outline for plaintiff's expert witness";
- 1/23/25, Schwahn, 0.7 hours to "[c]ontinue editing and refining cross examination outline for plaintiff's expert witness D. Hollon";

- 1/24/25, Sale, 2.0 hours to "[p]repare strategy for cross-examination of plaintiff's expert witness";

- 1/26/25, Schwahn, 0.6 hours to "[c]ontinue editing and revising cross examination outline for plaintiff's expert witness";

- 1/26/25, Schwahn, 1.1 hours to "[d]raft and edit S. Partain witness preparation outline and prepare sample cross examination questions based on theories presented by plaintiff's expert witness";

- 1/27/25, Sale, 0.6 hours to "[c]ontinue preparing questions and strategy for cross examination of plaintiff's expert witness at upcoming arbitration";

- 1/27/25, Schwahn, 0.5 hours for "[f]urther edits and revisions to arbitration brief to incorporate additional arguments regarding expert testimony and related issues";

- 1/27/25, Schwahn, 0.8 hours for "[f]urther edits and revisions to cross examination outline for plaintiff's expert witness"; and

- 1/27/25, Schwahn, 1.4 hours for "[f]urther edits and revisions to opening and closing statements for arbitration to incorporate additional argument based on anticipated expert testimony and arguments presented in plaintiff's arbitration brief."

SageStream argues that all of this work is "duplicate" because it spent some time before the originally-scheduled hearing when it learned of Mr. Breitenbach's plan to call an expert witness. Be that as it may, it remains the case that the work for which SageSteam now seeks reimbursement is work that it would have had to do if it had a timely expert disclosure from Mr. Breitenbach. It can't recover for that work.

*Second*, Mr. Breitenbach objects to entries that describe other miscellaneous new work, such as third-party discovery that occurred after November 1, 2024. These are not compensable and, in fact, SageStream represented that it would not seek compensation

5

for "new discovery with third parties." (ECF No. 39-1, p. 7.) I will reduce Mr. Schwahn's time by 2.0 hours and Ms. Sale's time by 0.2 hours, reflecting the following subtractions:

- 12/17/24, Sale, 0.2 hours to "[e]xamine motion to compel filed by plaintiff against non-party Synchrony";

- 1/9/25, Schwahn, 0.8 hours to "[p]repare for upcoming arbitration by reviewing new exhibits and deposition transcripts to identify in updated exhibit list";

- 1/26/25, Schwahn, 0.9 hours to "[u]pdate and revise arbitration brief to include additional facts and arguments developed in recent discovery"; and

- 1/27/25, Schwahn, 0.3 hours to "[u]pdate exhibit list to include Synchrony declaration prior to serving final exhibit list and declaration."

*Third*, Mr. Breitenbach identifies entries for work that he argues should have been done before the first arbitration date or is otherwise unreasonable. I agree that some of these vaguely worded tasks don't appear to be duplicates of work already performed, or if they are, would be excessive. However, I will not police counsel's time to the point of nit-picking the hours and minutes they spent repreparing witnesses and re-acquainting themselves with arbitration materials. I will reduce Mr. Schwahn's time by 5.7 hours and Ms. Sale's time by 0.5 hours, reflecting the following subtractions:

- 12/11/24, Sale, 0.5 hours to "[d]evelop strategy for witness testimony at upcoming arbitration";

- 12/11/24, Schwahn, 0.3 hours for "[e]mail exchanges with plaintiff's counsel relating to witnesses for arbitration and logistics of same";

- 1/8/25, Schwahn, 0.4 hours to "[d]evelop strategy for arbitration and arbitration preparations";

- 1/22/25, Schwahn, 1.4 hours to "[u]pdate and revise direct examination outline for S. Partain testimony at arbitration …";

- 1/27/25, Schwahn, 0.7 hours to "[d]evelop strategy regarding presentation of evidence and witnesses during arbitration"; and

- 1/27/25, Schwahn, 2.9 hours to "[c]all with S. Partain, K. Sale, and others to prepare witness for direct and cross examination at arbitration."

### 2. Hourly Billing Rate

Counsel for SageStream assert that they should receive their contracted rates for this case, *i.e.*, $539 per hour for Mr. Schwahn and $487 per hour for Ms. Sale. (*See* ECF No. 39-1, p. 4.) Hourly rates in fee petition cases are typically set according to "the prevailing market rate in the relevant community." *See Planned Parenthood of Cent. N.J.*, 297 F.3d at 265 n.5 (citation omitted). Mr. Breitenbach contends that SageStream's proposed rates are unreasonable because they do not accurately reflect the attorneys' experience in the field. However, "[t]he starting point in determining a reasonable hourly rate is the attorneys' usual billing rate[,]" and I find that the rates here are not unreasonably disproportionate to the Community Legal Services rate ranges that Mr. Breitenbach identifies. *Pub. Int. Rsch. Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995). Further, "[t]he policy considerations behind fee awards to prevailing plaintiffs … are different from the policies underlying sanctions[.]" *Doering*, 857 F.2d at 196. When imposing sanctions, the fee should be "the minimum that will serve to adequately deter the undesirable behavior." *Id.* at 194. In this situation, I find that the actual hourly fee rates that counsel for SageStream billed provide the minimum appropriate sanction because it will force future litigants to consider the actual costs to their opponents of their actions.

*See Bartos v. Com., Dept. of Env't Prot.*, No. 08-cv-0366, 2010 WL 2853643, at *8 (M.D. Pa. July 20, 2010).

### B. Costs

SageStream's costs are reasonable. It seeks reimbursement for meals totaling approximately $290 over multiple days for three individuals. I see nothing wrong with that. Similarly, I find it reasonable that Mr. Schwahn's hotel stay was from October 30 to November 2, 2024, given that the arbitration hearing was to take place the morning of November 1 and that I scheduled a telephonic hearing on the motion to strike the expert report for the day before. Finally, I accept SageStream's explanation regarding the airport taxi and parking charges and will permit reimbursement for both.

### IV. CONCLUSION

SageStream may only receive compensation for work that its counsel had to redo because of the three-month delay before the rescheduled arbitration hearing. I will therefore subtract hours that pertain to new work or work that was otherwise not duplicated. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

March 27, 2025